Filed 12/7/23  P. v. Taylor CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOHN LAWRENCE TAYLOR,<br><br>Defendant and Appellant. | C096640<br><br>(Super. Ct. No. CRF160001937) |

After pleading not guilty by reason of insanity (NGI) to the charge of resisting an executive officer, defendant John Lawrence Taylor was committed to a state hospital for a six-year term.  (Pen. Code, § 69.)[1]  The People petitioned to extend the term for two years, alleging that by reason of mental disease, defect, or disorder defendant presented a substantial danger of physical harm to others.  (§ 1026.5, subd. (b)(1).)  The officer

---

[1]  Undesignated statutory references are to the Penal Code.

1

involved testified about the underlying offense at the trial on the petition. The jury found the allegations of the petition true and the trial court extended defendant's commitment for two years.

Defendant contends evidence of the underlying offense was irrelevant and should not have been admitted. We disagree. Relevant evidence includes defendant's violent threats charged in the underlying offense as an indication of future violent tendencies. More importantly, the underlying offense is relevant because defendant continued to exhibit the same conduct during commitment, indicating that he continued to experience the same mental illness. We find no abuse of discretion and will affirm the order extending commitment.

## I. BACKGROUND

In January 2018, defendant pled not guilty by reason of insanity to obstructing and resisting an executive officer by threats. Defendant also admitted a prior strike. (§ 1170.12.) Other pending charges against defendant were dismissed. Defendant agreed to commitment to the Department of State Hospitals for a term of six years. Defendant acknowledged the possibility of extension of his commitment beyond six years and potentially for life. The trial court found defendant guilty and insane at the time of the offense and committed defendant for the maximum term of six years.

In February 2022, the People filed a petition to extend defendant's commitment. Defendant requested a jury trial. The People and defendant moved in limine to admit or exclude, respectively, testimony regarding the underlying offense. At the hearing on the motions in limine, the trial court stated that its tentative ruling was to grant the People's motion and allow evidence regarding defendant's underlying offense. At the commencement of trial, the trial court adopted its tentative ruling.

2

At trial, the People called as a witness Andrew Page, a deputy in the Shasta County Sheriff's Office.[2]  In 2016, Deputy Page was a correctional officer in the Shasta County Jail.  On March 16, 2016, when Deputy Page went to defendant's cell, he smelled a strong odor of fecal matter and urine and noticed fecal matter leading up to and near the cell.  The window to the cell was covered in what appeared to be fecal matter and pages from books.  Deputy Page attempted to get defendant to respond verbally but only heard him laughing.  Officers decided to remove defendant from his cell to clean it.  Officers were able to enter the cell and place defendant in shackles and also secure his wrists.  Deputy Page saw something on the wall.  When officers searched defendant, he said they would not find anything on him, it was on the wall.  A pen sharpened to a point was stuck on the wall with fecal matter and paper.  The words "Page will die" were written on the wall in large letters in fecal matter.  Defendant was moved to the shower and the cell was sanitized.  Defendant was returned to his cell.  As Deputy Page was leaving the cell, defendant yelled, "Fuck you, Page.  I'm going to kill you and your family, motherfucker.  I'll piss in your mouth."

At a subsequent welfare check, Deputy Page was unable to see the defendant, and defendant did not respond to verbal commands.  Deputy Page entered the cell and found defendant hiding in a spot in the corner of the cell that could not be viewed from the cell window.  At a subsequent welfare check, defendant was again hiding in the blind spot.  Defendant said, "[F]uck you, you're going to have to do this shit all night.  Fuck you, I ain't getting up, I ain't moving."  At another welfare check, defendant uttered a series of expletives directed at Deputy Page, threatened to kill his family in a graphic and

---

[2]  Six witnesses testified at trial, including defendant's treating psychiatrist, treating psychologist, a psychiatric technician, and a registered nurse.  We limit our summary to the testimony relevant to the issue on appeal.

gruesome manner, and also threatened to kill the district attorney. Defendant continued with this behavior at each welfare check until the end of Deputy Page's shift.

Dr. Sabina Correa, a psychologist at Napa State Hospital, testified regarding the similarities between the underlying offense and defendant's conduct at the hospital. Dr. Correa testified that she had read the police report from 2016 regarding the incident with Deputy Page. Defendant's primary diagnoses at the time of the underlying offense were schizoaffective disorder bipolar type, with paranoid traits, borderline personality disorder, and antisocial personality order. As the evaluating doctor, Dr. Correa opined that defendant's current presentation was the same as the severe mental illness that caused his underlying offense and that defendant would remain a danger based on the same presentation.

Specifically, Dr. Correa testified that defendant's pattern of hiding in the blind spot of his cell could be attributed to a combination of antisocial personality disorder and potentially paranoia. A registered nurse at Napa State Hospital testified to an incident where defendant was hiding under a bed and around corners so he could not be seen.

Dr. Correa further testified that she reviewed a note regarding an incident in April 2021 where defendant coughed up phlegm, spat, and fought with police. In another incident on the same day, defendant threatened to stab and kill staff and his psychiatrist with a "shank." Dr. Correa testified that these violent behaviors were similar to the underlying offense. Dr. Correa also found similarities between the pen sharpened to a point in 2016 and an incident in 2021 where defendant was found to be hiding pens.

Dr. Correa's assessment was that little clinical progress had been made during defendant's commitment. Defendant presented the same mental illness as at the time of the underlying offense.

The jury found the allegations of the petition to be true. The court extended defendant's commitment to March 2024.

Defendant filed a timely notice of appeal.

4

## II. DISCUSSION

"Section 1026.5, subdivision (a)(1) provides that an NGI defendant committed to a state hospital after being found not guilty of an offense by reason of insanity pursuant to section 1026 'may not be kept in actual custody longer than the maximum term of commitment.' (§ 1026.5, subd. (a)(1).) However, under section 1026.5, subdivision (b)(1), an NGI defendant may be committed beyond the term prescribed by subdivision (a) if he or she 'has been committed under Section 1026 for a felony and,' after a trial, the trier of fact finds that he or she 'by reason of mental disease, defect, or disorder represents a substantial danger of physical harm to others.' " (*People v. Redus* (2020) 54 Cal.App.5th 998, 1010 (*Redus*); see also *People v. Zapisek* (2007) 147 Cal.App.4th 1151, 1159 (*Zapisek*).) "Proof of dangerousness also requires proof that the NGI defendant has 'at the very least, serious difficulty controlling his potentially dangerous behavior.' " (*Redus, supra*, at p. 1010, quoting *Zapisek, supra*, at p. 1165.)

" ' " ' "Whether a defendant 'by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others' under section 1026.5 is a question of fact to be resolved with the assistance of expert testimony." ' " ' " (*Redus, supra*, 54 Cal.App.5th at p. 1011; *Zapisek, supra*, 147 Cal.App.4th at p. 1165; see also *People v. Superior Court (Blakely)* (1997) 60 Cal.App.4th 202, 205, 215 (*Blakely*).) In *Zapisek*, the court said the most important evidence at an extension hearing was expert testimony that the defendant's "delusions were of the same type as those he experienced when he committed" the underlying crime. (*Zapisek, supra*, at p. 1166.) "Other relevant evidence bearing on the issues of [the defendant's] mental disorder and dangerousness may include, inter alia, previous instances of violent behavior [citation], as well as the determination of the treatment staff at [the hospital], [the defendant's] behavior at that facility and psychiatric evaluations." (*Blakely, supra*, at p. 215, citing *Kansas v. Hendricks* (1997) 521 U.S. 346, 355, fn. 2.) In *Kansas v. Hendricks*, the Supreme Court

5

said: "As we have recognized, '[p]revious instances of violent behavior are an important indicator of future violent tendencies.' " (*Kansas v. Hendricks, supra*, at p. 358.)

The trial court's rulings on evidence are reviewed for abuse of discretion. (*People v. Kopatz* (2015) 61 Cal.4th 62, 85.) "A trial court has abused its discretion when its ruling ' "fall[s] 'outside the bounds of reason.' " ' " (*Ibid.*)

We conclude that Deputy Page's testimony was relevant to whether defendant had serious difficulty in controlling his potentially dangerous behavior. Evidence of the nature and severity of the underlying offense were relevant foundational facts underlying Dr. Correa's expert opinion in the case. In other words, evidence of defendant's conduct in the 2016 incident—hiding, sharpening a pen, as well as threatening violence—was relevant to Dr. Correa's assessment that defendant's similar behavior in the hospital indicated that defendant had made little progress with the mental illness he experienced in 2016. In addition, defendant's violent threats in 2016 were an indicator of future violent tendencies.

We note that on reply defendant shifts the argument to the contention that "[t]he detailed testimony of Deputy Page did not tend to prove similarities with [defendant's] inpatient actions, that would not have been adequately presented by limiting the evidence to the original complaint itself." Defendant did not argue in the opening brief for limiting the evidence of the underlying offense to reading the complaint. Rather, defendant asserted that all evidence of the underlying offense should have been excluded as irrelevant. In any event, the allegations in the complaint that defendant resisted Deputy Page in violation of section 69 did not include any factual details of the March 2016 incident, including the nature and severity of the threats defendant made or any of the other conduct defendant exhibited in 2016.

We conclude the trial court did not abuse its discretion in allowing testimony from Deputy Page regarding the underlying crime.[3]

### III.  DISPOSITION

The order extending defendant's commitment is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

DUARTE, Acting P. J.

/S/

_____

KRAUSE, J.

---

[3] Because we conclude the evidence was relevant, and defendant did not argue below or on appeal that the trial court should have excluded Deputy Page's testimony under Evidence Code section 352, we need not consider whether:  (1) the evidence was more prejudicial than probative, or (2) admission of the testimony was harmless error in light of the testimony of other witnesses, as the People argue.