[No. A115464. First Dist., Div. Two. Dec. 18, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID WAYNE SUDAR, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I. of Discussion.

## COUNSEL

Matthew Zwerling, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Stan Helfman and Sharon G. Birenbaum, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KLINE, P. J.**—David Wayne Sudar appeals from an order extending his commitment to Napa State Hospital under Penal Code section 1026.5, subdivision (b). He contends his constitutional right to due process was violated by the trial court's failure to instruct the jury that the prosecution was required to prove he had "serious difficulty controlling his dangerous behavior." He further contends the petition should have been dismissed because it was not filed within the time specified by statute. We affirm.

### STATEMENT OF THE CASE AND FACTS

In 1999, appellant was found not guilty by reason of insanity of three counts of arson, committed to Patton State Hospital, and then transferred to Napa State Hospital. (Pen. Code, §§ 451, subd. (c), 1026.)[1] According to a subsequent evaluation by the Department of Mental Health, appellant set fire to a church, trailer park laundry, and another building in Gualala on January 31, 1998, "acting on his belief that God had given him messages and that he should carry out God's wishes. He was attempting to bring attention to and expose a satanic cult he believed was using these structures. He further believed and continues to believe that he is the Son of God and that his actions were inspired by divine messages." Appellant's maximum term of commitment was due to expire on October 3, 2006.

On July 11, 2006, the medical director of the Napa State Hospital requested the district attorney to file a petition for extension of appellant's commitment. The district attorney filed the petition pursuant to section 1026.5, subdivision (b), on July 21, 74 days before the expiration of appellant's current commitment. A report prepared by hospital staff, recommending

---

[1] All statutory references will be to the Penal Code unless otherwise specified.

extension of appellant's commitment, stated that appellant had made "some progress" and was "able to maintain himself on the open unit" and had not been "involved in any assaults or other problematic behavior." According to this evaluation, however, appellant "continues to believe that he has no mental illness and he is being unnecessarily medicated. . . . [Appellant] continues to state that he was defending himself when he committed his instant offense and that if he were in the same situation again he believes he will do the same thing again if it is necessary. . . . He has been complaining to authorities about being unfairly detained and has demonstrated a complex delusional belief. He believes that the unit psychologist during her vacations went to the place his instant offense was committed and verified 'the facts' confirming there were in fact cults in the area and that his life was threatened. He believes the psychologist presented these 'facts,' which would justify his commitment of the offense to hospital authorities, but a cover up by the authorities was made which has hindered his release." The report further stated that appellant had "not developed any relapse prevention plan" and that his "delusional thinking along with his inability to stay medication compliant in the community make him a danger to the community." The treatment team opined that appellant, "because of a mental disease, defect or disorder, represents a substantial danger of physical harm to others."

On July 31, 2006, appellant, in propria persona, filed a petition for writ of habeas corpus in the superior court, seeking to withdraw his plea of not guilty by reason of insanity on the ground that he had not been advised of the potential for lifetime commitment resulting from the plea. The petition was denied after a hearing on August 28, 2006.

Trial on the extension of his commitment began with jury selection on August 29, and the case was presented on August 30. Dr. Joginder Singh, staff psychiatrist at Napa State Hospital, testified that he had been treating appellant almost two years on an "open unit."[2] Appellant had been on this unit since 2003. Singh was on the unit four days a week, met in treatment planning conferences with appellant and other treatment team members every 90 days, and met individually with appellant at least once a month. When they met, Singh discussed with appellant the offenses he had committed and the criteria for his discharge. Appellant continued to believe that he set fire to the buildings to protect and defend himself, and did not think his belief in the existence of the satanic cult was a delusion. As of the treatment conference on July 26, 2006, appellant believed he was the son of God; he said then, and had said many times, that he would take the same action under similar

---

[2] Singh explained that an open unit is not locked, although it is behind the fence of the hospital, and its patients are eligible to go onto the hospital grounds at their own will. An open unit is considered to prepare patients for discharge into the community.

circumstances. Appellant had never expressed any recognition that he did something wrong and believed God told him to burn the buildings.

When appellant first came to Napa State Hospital, his diagnosis was schizophrenia, paranoid type. This was later changed to "delusional disorder, grandiose type"—grandiose, because he believed he was the son of God, and not schizophrenia because he was "very high functioning." Appellant was being treated with the medication Abilify, but it was "not very effective" and he still had a "delusional disorder" and "delusional thoughts." He had been tried on other medications previously, and had been off medication for more than six months before he began the Abilify. According to Singh, this was not a long enough period to be able to determine whether appellant's behavior was the same regardless of whether he was taking medication. Singh stated that "there are patients who do not respond fairly well to the medications. But that does not mean we can have the luxury of not giving the medication to the patients because they have the tendency to deteriorate further if they're not given medication." Appellant did not believe he had a mental illness or needed medication. Singh testified that patients who believe they do not have a mental illness generally are not compliant with taking their medication once released from an institution.

Singh testified that appellant had a long history of substance abuse, including marijuana, cocaine and amphetamines, but did not believe he had a substance abuse problem. One of the reasons the treatment team was recommending extension of appellant's commitment was that appellant did not think he needed a "relapse prevention plan," a plan written by the patient with the help of the treatment team addressing what the patient would do in situations where he would be likely to want to take drugs again. Singh stated that studies had shown mental illness is magnified by drug use, substance abuse can make treatment ineffective, and many mentally ill patients attempt to treat themselves with street drugs.

Singh stated that other than his "very complex delusion," appellant was "functioning very well." Singh noted, as appellant's strengths, that he had not been violent since he had been in the hospital and he had been very polite, able to maintain himself on the open unit, and able to maintain his job on campus. The factors that made him dangerous for the community if released were that he did not believe he had a mental illness or substance abuse problem, needed a realistic relapse prevention program or needed medication, and that he believed he would take the same actions again under the same kind of circumstances. In order to be released, Singh said, appellant would have to satisfy standard discharge criteria set by the state, including understanding he had a mental illness, understanding his "signs and symptoms" so he could seek help if necessary, understanding his offenses, being remorseful

for the people he harmed, understanding the effect of substance abuse on his mental illness and offenses, and having a realistic relapse prevention plan.

Dr. Morgan Kennedy had been a clinical psychologist at Napa State Hospital for three and one-half years. Kennedy had worked with appellant in treatment groups since 2003. Appellant was reserved about talking about himself in groups but gave good feedback to others. He also kept to himself on the unit and did not open up much to staff. This made it difficult to build a rapport with appellant and understand whether treatment had worked and his condition had changed.

Kennedy testified that appellant continued to believe he did the right thing in burning the buildings and had never shown remorse for his actions. She said appellant hoped he would not have to set a fire again in the future but "he's not sure if God tells him if that's what he needs to do and if he needs to defend himself, he will do so." Appellant continued to believe he was the son of God and stated he did not believe he had a mental illness. Kennedy testified that appellant had "idea of reference," thinking that things he saw or heard were related to him, such as seeing a helicopter and thinking it was after him. Appellant believed that Kennedy had gone to Gualala, determined that his story was true, and told the hospital this, but there was a coverup to keep him in the hospital. He maintained this belief despite the hospital staff telling him it was not true, and had written to the hospital director and Department of Justice about it. Kennedy testified that this delusion showed paranoia, which, combined with the grandiose delusion of being the son of God, substantially increased the risk of possible dangerousness in the community.

Appellant reported having used methamphetamine until a few days before the arson, and Kennedy stated that methamphetamine was known to increase paranoia and delusions. Kennedy had not been able to locate any records of drug testing done at the time of appellant's arrest. According to Kennedy, it was significant that appellant had a history of substance abuse dating to his teenage years, because evidence shows that a history of substance abuse increases a person's overall risk of dangerousness. The length of appellant's history and the fact that he used several different substances also increased his risk of resuming substance abuse if released from the hospital, and relapse into substance abuse would increase his risk for dangerousness. Kennedy described appellant as having an "encapsulated delusion." She explained that, although appellant is able to function well at his job and maintain his position on the open unit, his delusion overrides his judgment, making him feel he must follow through if God tells him to do something. For Kennedy to be

able to recommend release, appellant would have to recognize and accept that he has a mental illness, accept treatment, and be able to put together a plan for managing his symptoms and substance abuse in the community. Appellant did not feel he needed a relapse prevention plan. He did write one, but in the third person, which Kennedy saw as related to his feeling that the plan was unnecessary for him. Kennedy described the same standard discharge criteria as Singh, adding that the patient to be discharged also had to be able to work well with authority figures and be able to "negotiate with hospital staff and with the conditional release program."

Appellant presented no evidence. The jury returned a verdict finding that appellant "suffers from a mental disease or defect" and, "by reason of a mental disease, defect or disorder, [appellant] is a substantial danger of physical harm to others." The court ordered appellant's commitment extended to October 3, 2008.

Appellant filed a timely notice of appeal on September 29, 2006.

## DISCUSSION

Section 1026.5, subdivision (b)(1), provides: "A person may be committed beyond the term prescribed by subdivision (a) only under the procedure set forth in this subdivision and only if the person has been committed under Section 1026 for a felony and by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others." Under the statutory procedures relevant to the present case, "[n]ot later than 180 days prior to the termination of the maximum term of commitment prescribed in subdivision (a), the medical director of a state hospital in which the person is being treated . . . shall submit to the prosecuting attorney his or her opinion as to whether or not the patient is a person described in paragraph (1)" (§ 1026.5, subd. (b)(2)); the prosecutor's petition for extended commitment "shall be filed no later than 90 days before the expiration of the original commitment unless good cause is shown" (§ 1026.5, subd. (b)(2)); the court must advise the person named in the petition of the right to an attorney and a jury trial, and the rules of discovery in criminal cases apply (§ 1026.5, subd. (b)(3)); and the "trial shall commence no later than 30 calendar days prior to the time the person would otherwise have been released, unless that time is waived by the person or unless good cause is shown" (§ 1026.5, subd. (b)(4)).

## I.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II.

Appellant also contends reversal is required due to the trial court's failure to give a requested jury instruction. At the outset of the extension of commitment hearing, defense counsel argued that the standard jury instruction, Judicial Council of California Criminal Jury Instructions (2006) CALCRIM No. 3453, should be modified to include the requirement set forth in *In re Howard N.* (2005) 35 Cal.4th 117 [24 Cal.Rptr.3d 866, 106 P.3d 305] (*Howard N.*), that the prosecution prove the person to be committed could not control his dangerous behavior. The prosecutor disagreed, arguing that *Howard N.* construed a different statutory scheme and was not applicable in the present context. The trial court denied the defense request.[4]

■ As we recently concluded in *People v. Zapisek* (2007) 147 Cal.App.4th 1151, 1165 [54 Cal.Rptr.3d 873], in order to satisfy the constitutional requirement of due process, a commitment may be extended under section 1026.5, subdivision (b)(1), only if there is substantial evidence the defendant had, "at the very least, serious difficulty controlling his potentially dangerous behavior." (Accord, *People v. Bowers* (2006) 145 Cal.App.4th 870, 878 [52 Cal.Rptr.3d 74]; *People v. Galindo, supra,* 142 Cal.App.4th at p. 537.) This requirement follows from the fundamental principle that " 'civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.' " (*Howard N., supra,* 35 Cal.4th at p. 127, quoting *Addington v. Texas* (1979) 441 U.S. 418, 425 [60 L.Ed.2d 323, 99 S.Ct. 1804].) The requirement of serious difficulty in controlling dangerous behavior "serves 'to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous *beyond their control.*' ([*Howard N., supra,* 35 Cal.4th] at p. 128, italics added.) Quoting *Kansas v. Hendricks* (1997) 521 U.S. 346, 360 [138 L.Ed.2d 501, 117 S.Ct. 2072], *Howard N.* explained that a prediction of future dangerousness, coupled with evidence of lack of volitional control, adequately distinguishes between persons who are subject to civil commitment and ' "other dangerous persons who are perhaps more properly dealt with

---

*See footnote, *ante,* page 655.

[4] After trial, on September 12, the court placed appellant's case on calendar for consideration of *People v. Galindo* (2006) 142 Cal.App.4th 531 [48 Cal.Rptr.3d 241], which had been certified for publication after the jury's verdict and which supported appellant's position on the jury instruction modification he had requested. At a hearing on September 27, the court advised the defense to file a motion for new trial if it wanted the issue addressed. This apparently did not occur.

exclusively through criminal proceedings." ' (*Howard N., supra*, 35 Cal.4th at p. 129, quoting *Hendricks*, at p. 360.)" (*Galindo, supra*, 142 Cal.App.4th at p. 537.)

The jury in the present case was instructed pursuant to CALCRIM No. 3453: "David Wayne Sudar has been committed to a mental health facility. You must decide whether he currently poses a substantial danger of physical harm to others as a result of mental disease, defect, or disorder. That is the only purpose of this proceeding. You are not being asked to decide David Wayne Sudar's mental condition at any other time or whether he is guilty of any crime. [¶] To prove that David Wayne Sudar currently . . . poses a substantial danger of physical harm to others as a result of mental disease, defect or disorder, the People must prove beyond a reasonable doubt that: [¶] One, he suffers from a mental disease, defect, or disorder; [¶] And, two, as a result of his mental disease, defect, or disorder, he now poses a substantial danger of physical harm to others."

The Attorney General concedes that, under our decision in *People v. Zapisek, supra*, 147 Cal.App.4th 1151, the trial court erred in failing to instruct the jury pursuant to *Howard N., supra*, 35 Cal.4th 117. It is argued, however, that the error was harmless because there was overwhelming evidence that appellant had serious difficulty controlling his dangerous behavior. We agree.

The evidence was undisputed that appellant continued to suffer from the same delusion that was operating when he committed the arson that led to his institutionalization. Indeed, Kennedy testified that appellant's delusion had expanded to include more people: Not only did he continue to believe satanic cults were at work, but he believed a conspiracy was in place at the hospital to keep this a secret and keep him in the hospital. Appellant did not believe he was mentally ill, did not acknowledge having substance abuse problems, had no remorse for his criminal conduct, and consistently maintained that he would do the same thing in the same circumstances. According to Kennedy, although appellant was able to function well in some spheres, his delusion "is such that his judgment is overridden by that. So that he feels if God tells him to do something, that he must follow through with that."

Appellant's situation is thus similar to that of the defendant in *Zapisek*, who "continued to believe wholeheartedly in delusions and experience paranoia which he cannot control, both of which are of the type that has led him to act violently in the past, and which cause him to act inappropriately, including so as to pose a danger to others." (*People v. Zapisek, supra*, 147 Cal.App.4th at p. 1166.) We recognize that *Zapisek* found only substantial evidence that the defendant had serious difficulty controlling his dangerous

behavior, whereas the question before us is whether we can say that " 'no rational jury could have failed to find [defendant] harbored a mental disorder that made it seriously difficult for him to control his violent . . . impulses . . . [making] the absence of a "control" instruction . . . harmless beyond a reasonable doubt.' " (*Howard N., supra,* 35 Cal.4th at p. 138, quoting *People v. Williams* (2003) 31 Cal.4th 757, 760 [3 Cal.Rptr.3d 684, 74 P.3d 779].) The evidence here satisfies this higher standard.

Appellant likens his case to *People v. Galindo, supra,* 142 Cal.App.4th 531. The defendant in that case suffered from bipolar disorder and an antisocial personality disorder but denied having either disorder or needing the medication he was given, and his psychiatrist believed he would stop taking the medication if released. He also denied having abused substances despite evidence in his record documenting such abuse and did not accept his criminal history including rape and burglary, but rather claimed he had been framed. The defendant did not want to work with the program that supervises patients after their release from a commitment, and his psychiatrist believed he would return to unlawful activities in an unstructured environment. (*Id.* at pp. 533–534.) *Galindo* found the trial court's failure to consider the "control" element of the recommitment standard prejudicial. The court explained that there was "abundant evidence that defendant's behavior was dangerous and that he did not, in fact, control it. However, the fact he *did not* control his behavior does not prove that he *was unable to do so,* thus making him 'dangerous beyond [his] control.' (*Howard N., supra,* 35 Cal.4th at p. 128.) There was little, if any, evidence that he *tried* to control his behavior, that he encountered *serious difficulty* when trying to do so, or that his difficulty was *caused by* his mental condition. Rather, the evidence strongly suggested that defendant *did not try* to control his dangerous behavior, because he perceived no reason to do so. . . . [¶] No expert opined that defendant's scores on standardized tests, his pursuit of another patient, or any other evidence demonstrates that he tried to control his dangerous behavior but encountered serious difficulty in trying to do so. . . . To the extent that defendant *did not try* to control his dangerous behavior, the evidence did not suggest that he would 'have serious difficulty controlling his dangerous behavior,' *were he to try to do so.* (*Howard N., supra,* 35 Cal.4th at p. 128.) In short, the evidence was not such that *any* rational jury would have found that ' "[defendant] harbored a mental disorder that made it seriously difficult for him to control his [dangerous behavior] . . . [making] the absence of a 'control' instruction . . . harmless beyond a reasonable doubt." [Citation.]' (*Id.* at p. 138 . . . .)" (*People v. Galindo, supra,* 142 Cal.App.4th at p. 539.)

██ The present case bears superficial similarity to *Galindo* in that the evidence shows appellant does not recognize he suffers from mental illness or needs treatment. The difference, however, is that the evidence here shows that appellant continues to suffer from complex delusions that overpower his judgment. Given the undisputed evidence that appellant's delusion remained unchanged from the time of the arsons and that he felt compelled to act in accordance with it, we find the instructional error harmless beyond a reasonable doubt.

The judgment is affirmed.

Haerle, J., and Richman, J., concurred.

On January 2, 2008, the opinion was modified to read as printed above.