Filed 12/22/15  P. v. Hansan CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOHN MICHAEL HANSAN,<br><br>        Defendant and Appellant. | A145177<br><br>(Sonoma County<br>Super. Ct. No. SCR-32259) |

John Michael Hansan appeals from a judgment extending his state hospital commitment under Penal Code section 1026.5,[1] which governs the procedures for extending the commitments of persons found not guilty by reason of insanity (NGI).  He contends the evidence was insufficient to support the findings necessary for the extension.  We affirm.

BACKGROUND

In 2003, appellant was charged with battery on a peace officer and found to be NGI.  (§§ 243, subd. (c)(2), 1026.)  He was committed to Napa State Hospital, and that commitment was extended several times under section 1026.5, sometimes with appellant's consent or stipulation.  On December 2, 2014, the district attorney filed a petition for extension of the commitment (which was then due to expire on May 29, 2015) for two years.  The case proceeded to a jury trial in April 2015, at which

_____

[1]  Further statutory references are to the Penal Code.

1

Dr. Domingo Laguitan, a staff psychiatrist with the hospital, was the sole witness to testify.

Dr. Laguitan had known appellant for nine months at the time of trial. Appellant was housed in one of the hospital's most restrictive units, which was designed for patients whose symptoms impacted their day-to-day functioning. Appellant generally refused to see Dr. Laguitan, and they had last met approximately two months before the trial.

Appellant suffers from schizophrenia, a chronic illness that requires constant treatment including medication. Though schizophrenia does not necessarily make people more dangerous, appellant's symptoms include paranoia and delusions that can trigger anger and anxiety and make him more prone to aggression. Appellant's schizophrenia was diagnosed in 1997, and in Dr. Laguitan's opinion, his 2003 battery offense was caused by his mental illness. Dr. Laguitan believed appellant's current mental state was not much different than it had been at the time of that offense.

One of appellant's recurring delusions was that his food and drinks were being poisoned. This translated into a concern about taking medications, and he only took medications because he was required to take them. He stopped taking his medications in February 2015 (about two months before the trial) and they had been administered involuntarily after a hearing at which it was determined he was incompetent to refuse them. Appellant had also stopped taking his medications in 2008, at which time he lost a lot of weight due to his concerns about being poisoned. He did not believe he was ill or needed medications.

Dr. Laguitan testified that appellant had been involved in "several . . . incidents of pushing and verbal aggression towards staff" at the hospital. On January 11, 2013, he shoved a staff member. In March 2015, he said he was "going to kill" anyone who stole a package he had received. On April 14, 2015, he forcibly shoved a staff member on the back, saying, "[Y]ou're in my way, better get out of my way, you fucking retard." In the months leading up to trial, appellant had made "rude and sarcastic" remarks to staff, had

2

issued "cold" (nonexplicit) threats, and had berated a staff member who asked him to put on a shirt, calling her a "whore."

In Dr. Laguitan's opinion, appellant "still poses a substantial risk to the community should he be released right now," based on his diagnosis, his symptoms associated with a higher risk of violence (delusions and paranoia), his lack of insight into his illness, and his belief that medication was not necessary even though his illness had influenced his behavior when he committed the underlying offense. Dr. Laguitan had considered appellant's entire history in reaching his opinion, including his acts of aggression and hostility toward the hospital staff as described above.

The jury was instructed with CALCRIM No. 3453 regarding the elements necessary to support an extension of the NGI commitment: "John Hansan, Respondent, has been committed to a mental health facility. You must decide whether he currently poses a substantial danger of physical harm to others as a result of a mental disease, defect, or disorder. That is the only purpose of this proceeding. You are not being asked to decide John Hansan's mental condition at any other time or whether he is guilty of any crime. [¶] To prove that John Hansan currently poses a substantial danger of physical harm to others as a result of mental disease, defect, or disorder, the People must prove beyond a reasonable doubt that: [¶] 1. He suffers from a mental disease, defect, or disorder; [¶] AND [¶] 2. As a result of his mental disease, defect, or disorder, he now: [¶] a. Poses a substantial danger of physical harm to others; [¶] AND [¶] b. Has serious difficulty in controlling his dangerous behavior."

The jury returned a verdict finding the allegations in the extension petition to be true and the court extended appellant's commitment by two years, until May 29, 2017.

DISCUSSION

Appellant argues that Dr. Laguitan's testimony did not amount to substantial evidence of two circumstances necessary to support an extension of an NGI commitment under section 1026.5: (1) that appellant had a mental disease, defect or disorder creating a substantial danger of physical harm to others; and (2) that as a result of this mental

3

disease, defect or disorder, appellant had serious difficulty in controlling his behavior. We disagree.

A.  *General Principles and Standard of Review*

Under section 1026.5, subdivision (a)(1), a person committed to a state hospital after being found NGI may be kept in custody no longer than the maximum term of imprisonment for the underlying offense.  Section 1026.5, subdivision (b)(1) provides that an NGI commitment may be extended beyond this period in two-year increments when "by reason of a mental disease, defect, or disorder" the defendant "represents a substantial danger of physical harm to others."  To comply with due process, the People must also prove that as a result of the mental disease, defect or disorder, the defendant had, "at the very least, serious difficulty controlling his potentially dangerous behavior." (*People v. Zapisek* (2007) 147 Cal.App.4th 1151, 1165 (*Zapisek*); see *People v. Sudar* (2007) 158 Cal.App.4th 655, 662 (*Sudar*); *People v. Galindo* (2006) 142 Cal.App.4th 531, 537 (*Galindo*); *People v. Bowers* (2006) 145 Cal.App.4th 870, 878.)  "[I]f individuals could be civilly confined as dangerous without *any* disorder-related difficulty in controlling their dangerous behavior, there would be no adequate distinction from the general run of dangerous persons who are subject exclusively to the criminal law." (*People v. Williams* (2003) 31 Cal.4th 757, 772.)

The People bear the burden of proving beyond a reasonable doubt the conditions required for an extended NGI commitment under section 1026.5.  (*People v. Superior Court (Blakely)* (1997) 60 Cal.App.4th 202, 215-216.)  We will uphold an order extending an NGI commitment if it is supported by substantial evidence; in other words, we review the entire record in the light most favorable to the order to determine whether any rational trier of fact could have found the requirements for an extension were proved beyond a reasonable doubt.  (*Zapisek*, *supra*, 147 Cal.App.4th at p. 1165.)

B.  *Substantial Danger of Physical Harm to Others*

Appellant does not dispute that he suffers from schizophrenia or that schizophrenia is a "mental disease, defect, or disorder" within the meaning of section

4

1026.5, subdivision (b)(1). He contends that notwithstanding his illness, the evidence did not support a finding he poses a substantial danger to others. We disagree.

A single psychiatric opinion that an individual is dangerous because of a mental disorder constitutes substantial evidence to support an extension of the defendant's commitment under section 1026.5. (*Zapisek*, *supra*, 147 Cal.App.4th at p. 1165.) Dr. Laguitan rendered such an opinion based on the nature of appellant's symptoms (delusions and paranoia), appellant's belief he was not ill and did not need to take medication, and appellant's recent acts of pushing and verbal aggression toward the staff. (See *People v. Beard* (1985) 173 Cal.App.3d 1113, 1118 [recent act of violence unrelated to the act that was the basis for the original commitment can support a finding the defendant represents a substantial danger of physical harm to others].) The credibility of an expert is a matter for the trier of fact, and we are not free to reweigh or reinterpret the evidence. (*People v. Mercer* (1999) 70 Cal.App.4th 463, 466-467.)

C. *Serious Difficulty in Controlling Dangerous Behavior*

Appellant next argues the evidence was insufficient to show that his mental illness causes him to have serious difficulty in controlling his dangerous behavior. He notes that Dr. Laguitan was not specifically asked to offer an opinion on this element, and reasons that as a consequence, there was no evidence to support such a finding. We are not persuaded.

Dr. Laguitan testified that appellant suffers delusions and paranoia as symptoms of his schizophrenia, that his schizophrenia contributed to the underlying battery against a peace officer, that appellant's mental state is essentially the same as it was at the time of the offense, that medication is imperative, and that appellant does not believe he has a mental disorder or needs medication. Moreover, when the symptoms of schizophrenia "are most severe, most active, . . . it's psychosis. You know, I have to introduce the term psychosis here as a general term. It just connotes [a] lack of reality testing."

From this, the jury could reasonably conclude that appellant would cease to take his medication if released, which in turn would produce a serious impairment in his

5

ability to control his behavior. "The People are not required to prove the defendant ' "is *completely* unable to control his behavior." ' [Citations.] Instead, the defendant's 'impairment need only be serious, not absolute.' [Citation.] . . . '[T]here may be "considerable overlap between a . . . defective understanding or appreciation and . . . [an] ability to control . . . behavior." [Citation.]' [Citation.]" (*People v. Kendrid* (2012) 205 Cal.App.4th 1360, 1370.)

In *Zapisek*, *supra*, 147 Cal.App.4th at pages 1165 through 1166, the court found substantial evidence that the defendant had serious difficulty controlling his behavior as a result of his mental illness when (1) he suffered from schizoaffective disorder, bipolar type, that caused him to suffer delusions rendering his reality testing impaired; (2) he was paranoid; (3) he had not completed a relapse prevention program and had pretended to take his medication; (4) he had acted in inappropriate ways as a result of his delusions; and (5) he was likely to deteriorate in an unstructured environment outside the hospital. "Most importantly, the experts agreed that Zapisek's delusions were of the same type as those he experienced when he committed the 1997 assault." (*Id*. at p. 1166.) Similarly, Dr. Laguitan's testimony about the nature of appellant's diagnosis, his continuing symptoms, the unlikelihood he would take medication if released, and his inappropriate and aggressive conduct toward hospital staff supply substantial evidence supporting the jury's verdict in this case.

In *Sudar*, *supra*, 158 Cal.App.4th at pages 663 through 664, the court reached a similar result in a different procedural context, finding harmless the erroneous failure to give an instruction on the control element in a proceeding under section 1026.5. The evidence in *Sudar* showed that the defendant continued to suffer from the same delusion that had led to the commitment offense and did not believe he was mentally ill; from this, the court concluded " ' "no rational jury could have failed to find [defendant] harbored a mental disorder that made it seriously difficult for him to control his violent . . . impulses . . . [making] the absence of a 'control' instruction . . . harmless beyond a reasonable doubt." ' " (*Id*. at p. 664.)

6

Appellant argues that reversal is required under *Galindo*, *supra*, 142 Cal.App.4th at page 539. His reliance on that decision is misplaced. In *Galindo*, the trial court held a bench trial and extended an NGI commitment of a defendant who was diagnosed with bipolar disorder without making the required finding (express or implied) that the defendant had serious difficulty controlling his behavior.[2] Finding the error to be prejudicial, the court noted that there was "abundant evidence that defendant's behavior was dangerous and that he did not, in fact, control it. . . . [T]he fact he *did not* control his behavior does not prove that he *was unable to do so*, thus making him 'dangerous beyond [his] control.' [Citation.]" (*Ibid.*) Remand was therefore necessary to allow the issue of control to be determined. (*Ibid.*)

Here, we are not faced with a failure to make a finding on the necessary element of control, because the jury was instructed on that element.[3] The question is not whether some jury could have found in appellant's favor on the control issue, but whether substantial evidence supports *this* jury's verdict and its determination that appellant had serious difficulty controlling his behavior as a result of his mental disorder. The jury could reasonably infer from Dr. Laguitan's testimony that the control element had been satisfied and we will not second-guess that determination on the record before us.

DISPOSITION

The judgment (order extending appellant's commitment pursuant to section 1026.5 until May 29, 2017) is affirmed.

---

[2] The bench trial in *Galindo* predated our Supreme Court's decision in *In re Howard N.* (2005) 35 Cal.4th 117 (*Howard N.*), which held that a civil commitment under Welfare and Institutions Code section 1800 et seq. could not be extended without a finding the defendant's mental disease, deficiency or defect causes serious difficulty in controlling behavior. (*Howard N.*, at p. 122.) The appellate court in *Galindo* extended the reasoning of *Howard N.* to extensions of NGI commitments under section 1026.5. (*Galindo*, *supra*, 142 Cal.App.4th at pp. 536-537.)

[3] During deliberations, the jury requested and received a readback of testimony relevant to whether appellant posed a substantial danger of physical harm to others and had serious difficulty controlling his behavior.

7

 

                                                                                          _____

NEEDHAM, J.

We concur.

_____

SIMONS, ACTING P.J.

_____

BRUINIERS, J.