Opinion
 

 GRIGNON, J.
 

 The petition for writ of mandate, filed on February 5, 1991; the opposition, filed May 10, 1991; the supplemental memorandum of points and authorities in support of petition, filed May 10, 1991; response to the supplemental memorandum of points and authorities, filed May 30, 1991; the request to dissolve stay or, in the alternative, petition for writ of
 
 *271
 
 habeas corpus, filed February 25, 1991; and the opposition to release, filed on May 20, 1991, have been read and considered.
 

 We are asked by petitioner (the People of the State of California) to decide whether the double jeopardy prohibitions of the federal and state Constitutions apply to proceedings, under Penal Code section 1026.5, to extend the commitment of a defendant previously found not guilty of a felony by reason of insanity and committed to a state hospital. We hold that double jeopardy prohibitions are not applicable to Penal Code section 1026.5 proceedings either by constitutional mandate or by virtue of the language of the statute itself. We conclude that respondent superior court (the trial court) erred in granting real party in interest Darryl Williams’s (the respondent) motion for nonsuit pursuant to Code of Civil Procedure section 581, subdivision (c). We order the trial court to vacate its order of nonsuit and dismissal and remand the matter for a new trial.
 

 Procedural Background
 

 Respondent pled guilty on June 25, 1982, to the voluntary manslaughter of Napoleon Hutchison in violation of former Penal Code section 192.1 and admitted the personal use of a deadly and dangerous weapon pursuant to Penal Code section 12022, subdivision (b). After a court trial, respondent was found not guilty by reason of insanity. The trial court found that respondent had not recovered his mental faculties and committed him to the Department of Mental Health for a maximum period ending on November 5, 1988.
 

 On December 15, 1988, his commitment was extended for two years pursuant to Penal Code section 1026.5. His extended commitment was to terminate on November 5, 1990. On July 10, 1989, respondent petitioned for early release pursuant to Penal Code section 1026.2, on the ground that his sanity had been restored. The order denying this petition was affirmed on appeal on March 20, 1991.
 

 On July 27, 1990, petitioner filed a petition to extend respondent’s commitment pursuant to Penal Code section 1026.5. The petition alleged that respondent had previously been committed as criminally insane to the Department of Mental Health and that, “by reason of mental disease, defect, or disorder, [respondent] represents a substantial danger of physical harm to others.” A jury trial commenced on January 8, 1991. Petitioner presented evidence and rested on January 29,1991. On that same date, respondent filed a motion for nonsuit, to which petitioner filed a written response.
 

 Presentation of respondent’s portion of the case continued through January 31, 1991. On January 30, 31 and February 1, 1991, respondent’s motion for
 
 *272
 
 nonsuit was called for hearing and argued.
 
 [1]
 
 On February 4, 1991, the motion was granted and the jury was discharged. The trial court refused to stay its ruling in order for petitioner to seek a writ of mandate, but did remand respondent into custody. The trial court ordered that respondent would be released at 5 p.m. on February 5, 1991, if a stay from this court were not received prior to that time. On February 5, 1991, the trial court signed and entered an order and judgment of nonsuit. On the same date, petitioner filed with this court an emergency petition for writ of mandate with a request for stay, and we issued an order temporarily staying the trial court’s order and judgment of nonsuit. On February 14, 1991, we issued an alternative writ of mandate and ordered the temporary stay to remain in full force and effect pending our determination of the merits.
 
 [2]
 

 We denied respondent’s requests to dissolve the stay, to be released on his own recognizance, and to be released on bail. Respondent’s petition for writ of habeas corpus, filed on February 25, 1991, has been consolidated with petitioner’s request for a writ of mandate.
 

 Facts
 

 Respondent was arrested at age 11 for stealing a bicycle. Respondent has been incarcerated for most of his life. He was detained for periods of time in both juvenile hall and juvenile probation camp. He was also committed to the California Youth Authority for second degree robbery, and this commitment was extended for fighting with another juvenile inmate. As an adult, he was sentenced to state prison for assault and, while in state prison, battered a guard. He was released from state prison on parole in 1981. Less than one month later, he killed Napoleon Hutchison by bludgeoning him to death with the butt of a shotgun.
 

 After his original commitment to the Department of Mental Health in 1982, respondent was ultimately placed in Patton State Hospital. While there, he attempted to manipulate the staff, possessed weapons and alcohol, threatened staff, lied, engaged in fights, refused to follow the rules, incited
 
 *273
 
 other patients to take over the staff, and had a staff member assaulted by another patient.
 

 During petitioner’s case-in-chief, four psychotherapists testified. All four testified generally that, in each of their opinions, respondent suffered from a mental disorder which caused respondent to present a substantial danger of physical harm to others. No psychotherapist testified, during petitioner’s case-in-chief, that respondent did not have a mental disorder, and no psychotherapist testified that respondent was not dangerous. Most of the psychotherapists testified that respondent suffered from features of other personality disorders, and one testified that respondent’s personality disorder might be a combination of two or more different types of disorder.
 

 The psychotherapists based their opinions, to varying degrees, on the following: personal contact, interviews with respondent and others, conversations with other health care professionals, review of hospital charts, review of reports by other psychotherapists, psychological testing, and review of arrest records and probation reports. Based on the foregoing examinations, they concluded that respondent is bitter, hostile, angry, impulsive, manipulative, evasive, threatening, intimidating, unstable, and unempathetic. They concluded further that his past history evidenced an unstable background, adjustment problems, limited frustration tolerance, acting out behavior, repeated aggression, substance abuse, difficulty with authority and societal rules, a lack of remorse, and an inability to accept blame.
 

 The psychotherapists testified that in arriving at their diagnosis of antisocial personality disorder, they used as guidelines the criteria set forth in the third revised edition of the Diagnostic and Statistical Manual (DSM III-R). In evaluating whether the DSM III-R criteria had been satisfied, they also drew inferences from the information they had obtained in their examinations. The DSM III-R delineates certain specific behaviors which must be exhibited by a person, both as an adult and before reaching the age of 15, in order for the individual to be diagnosed as having an antisocial personality disorder. One of the criteria, for example, is truancy. Respondent’s school records indicate many absences but do not provide a reason for these absences. In light of respondent’s total past history, the psychotherapists inferred that the absences were due to truancy and, therefore, that the truancy criteria had been met. Another criteria is initiating fights. Respondent’s past history further indicated that he had been engaged in fighting. The psychotherapists inferred, in light of all the circumstances, that respondent was the aggressor and, thus, initiated the fights.
 

 Motion for Nonsuit
 

 In his motion for nonsuit, respondent contended that petitioner failed to prove, by solid and substantial evidence, that respondent is dangerous based
 
 *274
 
 on a mental disease, defect, or disorder. Respondent also contended that the testimony of the psychotherapists was unreliable, in that it did not meet the precise criteria of the DSM III-R. He further contended that antisocial personality disorder is not a mental disease, defect, or disorder, as defined by the California Supreme Court. As authority for these contentions, respondent cited
 
 People
 
 v.
 
 Fields
 
 (1983) 35 Cal.3d 329 [197 Cal.Rptr. 803, 673 P.2d 680], which held that a mental disease or defect, for purposes of determining criminal insanity, does not include an abnormality manifested only by repeated criminal or antisocial acts. Respondent conceded that the
 
 Fields
 
 analysis had never been made expressly applicable to Penal Code section 1026.5 proceedings.
 

 Petitioner responded that DSM III-R criteria were met by the psychotherapists in arriving at their diagnosis. The DSM III-R contemplates that psychotherapists will have to make inferences from available data in order to determine if the criteria have been met. Moreover, petitioner argued that strict adherence to the diagnostic guidelines of the DSM III-R was not appropriate in a forensic setting. Petitioner contended that the diagnosis of respondent’s antisocial personality disorder was based not only on repeated criminal and antisocial acts, but also on the results of psychological testing, limited frustration tolerance, poor impulse control, underlying aggression and intolerance, inflexible thinking, externalization of blame, lack of remorse, distortion of reality, and unstable moods. Finally, petitioner argues that
 
 Fields
 
 was not applicable since the insanity test was based on “mental disease or defect,” while the extension of commitment test in section 1026.5 proceedings was based on “mental disease, defect,
 
 or disorder.”
 
 (Italics added.)
 

 Discussion
 

 I.
 
 Constitutional Double Jeopardy Prohibitions
 

 Both the federal and state Constitutions proscribe double jeopardy. The Fifth Amendment of the federal Constitution provides: “nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb.” Article I, section 15 of the California Constitution provides: “Persons may not twice be put in jeopardy for the same offense. ...” The purpose of the double jeopardy prohibition is to protect an individual from a second prosecution for the same offense after acquittal or conviction and from multiple prosecutions for the same offense. Double jeopardy applies to criminal prosecutions and is not applicable to civil proceedings.
 

 Initially, we must decide whether federal or state constitutional double jeopardy proscriptions are applicable to proceedings to extend
 
 *275
 
 commitment under Penal Code section 1026.5. We conclude that they are not. After a determination that a defendant is not guilty of a criminal offense by reason of insanity, he or she may be committed to the Department of Mental Health for a period not to exceed the maximum state prison sentence he or she could have received for the underlying offense. (Pen. Code, § 1026.) Such a defendant may be released when his or her sanity has been restored (Pen. Code, § 1026.2), but must be released when the maximum period expires (Pen. Code, § 1026.5). However, the district attorney may petition to extend the commitment of a patient whose maximum term of commitment has expired, if the patient poses a substantial risk of physical harm to others as a result of mental disease, defect, or disorder. Such extensions are for a period of two years. (Pen. Code, § 1026.5.)
 

 The commitment of a defendant to a state hospital after a Penal Code section 1026 insanity determination is in lieu of criminal punishment and is for the purpose of treatment, not punishment.
 
 (In re Moye
 
 (1978) 22 Cal.3d 457, 466 [149 Cal.Rptr. 491, 584 P.2d 1097].) “[While it is obvious that confining a person acquitted under Penal Code section 1026 in a state hospital serves to protect society from that person’s unreasonable acts and impulses, this sequestration likewise serves the patient by providing a setting for delivering treatment and services which may assist him or her towards mental health. The primary purpose of the state hospital system is to provide for the care, treatment and education of its mentally disordered patients.”
 
 (Department of Developmental Services
 
 v.
 
 Ladd
 
 (1990) 224 Cal.App.3d 128, 137 [273 Cal.Rptr. 485].)
 

 A proceeding to extend the commitment of a patient under Penal Code section 1026.5 is essentially civil in nature, because it is directed to treatment and not punishment.
 
 (People
 
 v.
 
 Beard
 
 (1985) 173 Cal.App.3d 1113, 1118 [219 Cal.Rptr. 225].) An individual subject to recommitment proceedings “is not threatened with penal treatment. He has had his criminal trial and been adjudicated not guilty by reason of insanity. The only remaining issue is how long he must remain committed to a state hospital for treatment.”
 
 (Juarez
 
 v.
 
 Superior Court
 
 (1987) 196 Cal.App.3d 928, 932 [242 Cal.Rptr. 192].) No criminal adjudication is involved. The recommitment procedures do not even come into play until after there has been a determination that the individual has committed an act for which he would be criminally liable if he were sane.
 
 (People
 
 v.
 
 Juarez
 
 (1986) 184 Cal.App.3d 570 [229 Cal.Rptr. 145].) Thus, it is clear that recommitment proceedings are not directed to the prosecution of an individual for an act or offense, since that adjudication has already been completed. There is no act or offense which is the subject of the recommitment proceedings.
 

 No California appellate court has determined that double jeopardy prohibitions are not applicable to Penal Code section 1026.5 proceedings to
 
 *276
 
 extend commitment. However, the Fourth District has concluded, in
 
 Conservatorship of Baber
 
 (1984) 153 Cal.App.3d 542 [200 Cal.Rptr. 262], that double jeopardy is not applicable to civil conservatorship proceedings and, thus, does not bar successive trials to reestablish a conservatorship.
 
 [3]
 
 “We believe that application of the doctrine of double jeopardy would frustrate, rather than promote, the discovery of truth in conservatorship proceedings. We cannot overemphasize the importance of recognizing that a prospective conservatee is not a criminal defendant but, in many cases, a person in dire need of the state’s assistance. A conservatorship proceeding is not a prosecution for a particular act, but an attempt to determine a condition which is subject to change. To apply the double jeopardy principle could deprive a person of much needed care, simply because he had previously been found not to need it.”
 
 (Id.
 
 at pp. 549-550.) Similarly, in
 
 Conservatorship of Davis
 
 (1981) 124 Cal.App.3d 313 [177 Cal.Rptr. 369], an individual was found to be not gravely disabled after a jury trial; this district concluded that the jury’s finding was not the functional equivalent of an acquittal of a criminal offense for double jeopardy purposes, and that the appeal of the conservator from the judgment of dismissal should not be dismissed.
 

 Further, in the analogous area of narcotics commitment, the Court of Appeal in
 
 People
 
 v.
 
 Toscano
 
 (1977) 69 Cal.App.3d 140 [137 Cal.Rptr. 893], concluded that the prosecution had a right to appeal from an order of the trial court recommitting a defendant to the California Rehabilitation Center (CRC). In
 
 Toscano,
 
 two defendants convicted of a crime were committed to CRC for narcotics treatment. Subsequently, the defendants were returned to court by the director on the ground that they were not fit subjects for treatment. After the hearing, the trial court ordered defendants recommitted to CRC, and the prosecution appealed. The Court of Appeal held that the narcotics commitment was civil in nature, and that nothing prohibited the prosecution from appealing an erroneous recommitment. The court did not, however, specifically discuss the double jeopardy doctrine.
 
 [4]
 

 The analysis of the appellate courts in the conservatorship cases is equally applicable to the extension proceedings at issue in this case. We note that respondent has cited us to no case, and we are aware of no case which concludes that double jeopardy provisions are applicable to conservatorship, commitment, recommitment, or extension of commitment proceedings.
 
 *277
 
 These types of proceedings are essentially civil in nature and are not adjudications of criminal offenses. It would be singularly inappropriate to apply double jeopardy provisions to these types of proceedings where the issue to be determined is not whether respondent committed an act or offense, but whether respondent suffers from a mental condition which makes him dangerous to others. While Penal Code section 1026.5 extension proceedings are initiated because respondent has committed some offense for which he would be criminally liable if he or she were sane, nevertheless the individual has been acquitted of criminal liability by reason of his insanity prior to the request for an extension of his or her commitment. Subsequent petitions to extend his or her commitment are unrelated to any criminal act or offense. Indeed, a patient must be released from the state hospital at the expiration of a maximum term of commitment, unless he or she is dangerous as a result of a mental disease, defect, or disorder. Thus, we conclude that constitutional protections against double jeopardy are not implicated in Penal Code section 1026.5 extension proceedings.
 

 II.
 
 Penal Code Section 1026.5
 

 Respondent contends that even if double jeopardy provisions are not applicable to these extension proceedings as a result of constitutional mandate, they are applicable by statutory mandate. He points to the language of Penal Code section 1026.5 itself, which provides that an individual who is the subject of extension proceedings “shall be entitled to the rights guaranteed under the federal and state Constitutions for criminal proceedings. All proceedings shall be in accordance with applicable constitutional guarantees.” (Pen. Code, § 1026.5, subd. (b)(5).) We disagree with this contention.
 

 Penal Code section 1026.5 was enacted in 1979, as emergency legislation in response to the California Supreme Court’s decision of
 
 In re Moye.
 

 [5]
 

 Prior to
 
 In re Moye,
 
 individuals committed to state hospitals after having been acquitted by reason of insanity were committed for an indefinite period of time.
 
 In re Moye
 
 concluded that equal protection principles mandated that such individuals be released after they had been committed for a period of time equal to the maximum state prison sentence which they could have received for the underlying offense. Faced with the imminent release of many potentially dangerous individuals, the legislature adopted Penal Code section 1026.5 to provide for a maximum term of commitment, together with the possibility of successive two-year recommitments for dangerous individuals. At the same time, the statutes relating to mentally
 
 *278
 
 disordered sex offenders (MDSO) were amended to provide for virtually identical procedures.
 

 Penal Code section 1026.5 establishes a proceeding which is essentially civil in nature, but which expressly provides for many procedures related to criminal prosecutions. The petition for extension is presented and prosecuted by the district attorney. The individual has the right to be represented by an attorney. Indigent individuals are entitled to have the public defender represent them and to have psychologists or psychiatrists appointed at government expense. The individual is entitled to a jury trial. The rules of criminal discovery apply. (Pen. Code, § 1026.5.) In addition to the express statutory provisions, certain other constitutional procedural guarantees are mandated by judicial decision. Thus, the state has the burden of proof, the individual is entitled to have his dangerousness determined beyond a reasonable doubt, and the individual is entitled to a unanimous jury.
 
 (People
 
 v.
 
 Feagley
 
 (1975) 14 Cal.3d 338 [121 Cal.Rptr. 509, 535 P.2d 373];
 
 People
 
 v.
 
 Burnick
 
 (1975) 14 Cal.3d 306 [121 Cal.Rptr. 488, 535 P.2d 352].) In addition, the individual has the right to confront and cross-examine witnesses. (Pe
 
 ople
 
 v.
 
 Wolozon
 
 (1982) 138 Cal.App.3d 456 [188 Cal.Rptr. 35].)
 

 It is clear, however, that although many constitutional protections relating to criminal proceedings are available in extension proceedings, the application of all such protections is not mandated by section 1026.5. The statutory language merely codifies the application of constitutional protections to extension hearings mandated by judicial decision. It does not extend the protection of constitutional provisions which bear no relevant relationship to the proceedings.
 
 (People
 
 v.
 
 Henderson
 
 (1981) 117 Cal.App.3d 740, 748 [172 Cal.Rptr. 858].) Thus, for example, ex post facto principles are not applicable to extension proceedings.
 
 (People
 
 v.
 
 Juarez, supra,
 
 184 Cal.App.3d 570.) Neither is the privilege against self-incrimination applicable to court-ordered psychiatric examinations.
 
 (People
 
 v.
 
 Beard, supra,
 
 173 Cal.App.3d at pp. 1118-1119;
 
 People
 
 v.
 
 Poggi
 
 (1980) 107 Cal.App.3d 581, 585-586 [165 Cal.Rptr. 758];
 
 People
 
 v.
 
 Henderson, supra,
 
 at pp. 746-748.)
 

 Since, as we have concluded in connection with our discussion of the constitutional principles, double jeopardy provisions can have no meaningful application to extension proceedings which are civil in nature, are for the purpose of treatment, not punishment, and are not an adjudication of a criminal act or offense, we hold that double jeopardy provisions are not applicable to extension proceedings by virtue of the language of the statute. Therefore, we are not precluded by the double jeopardy doctrine from reviewing the decision of the trial court granting a nonsuit.
 

 
 *279
 
 III.
 
 Mental Disorder
 

 In arriving at its order of nonsuit, the trial court determined that, as a matter of law, an antisocial personality disorder is not a mental disorder within the meaning of Penal Code section 1026.5. In arriving at this decision, the trial court relied on
 
 People
 
 v.
 
 Fields, supra,
 
 35 Cal.3d 329, which held that an antisocial personality disorder is not, as a matter of law, a mental disease or defect for purposes of the sanity phase of a trial. In other words, the trial court found that antisocial personality disorder can never be a mental disorder, while
 
 Fields
 
 found that it is not always a mental disease or defect. The trial court also based its determination on the conclusion that the same criteria used to determine whether an individual is not guilty by reason of insanity should be used to determine if that individual is dangerous for purposes of extension proceedings.
 

 The trial court stated:
 

 “However one works this out as a matter of law, it does seem to the court that the nonsuit motion must be granted. The disorder that is referred to in 1026.5(b) under the authority that has been available to this court, and in light of the rules of statutory [construction], has to be a disorder which approaches mental disease, or defect under the ALI standard or the [M’Naghten] test interpretation standards in order for the person to qualify for an extension as a matter of law. It seems to me that under the evidence presented in [petitioner’s] case there is no evidence that would justify a finding that [respondent] approaches that standard, and, therefore, the motion for non-suit is granted.”
 

 The trial court specifically indicated that it was ruling as a matter of law, and that it was not ruling on the factual sufficiency of the evidence. “As a matter of law, I have to conclude that the term ‘disorder,’ as used in 1026.5, in light of the Fields case and without any effort, apparently by the legislature to clarify it has to be deemed the type of disorder which Fields would find to be relevant.”
 
 [6]
 
 We conclude that the trial court erred in granting the motion for nonsuit.
 

 “A person is legally insane when by reason of mental disease or mental defect, [he or she] was incapable of knowing or understanding the nature and quality of [his or her] act or incapable of distinguishing right from wrong at the time of the commission of the crime.” (CALJIC No. 4.00.) The trial court does not err in instructing the jury that legal insanity must be
 
 *280
 
 by reason of mental disease or defect, even when there is evidence that a defendant suffers from an antisocial personality disorder.
 
 (People
 
 v.
 
 Fields, supra,
 
 35 Cal.3d at pp. 368-372;
 
 People
 
 v.
 
 McCaslin
 
 (1986) 178 Cal.App.3d 1, 8-9 [223 Cal.Rptr. 587].) It is also appropriate to instruct the jury that the terms mental disease or mental defect do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.
 
 (People
 
 v.
 
 Fields, supra,
 
 at p. 370.)
 
 [7]
 

 An individual is subject to extension of his or her commitment to a state hospital where, by reason of a mental disease, defect, or
 
 disorder,
 
 he or she represents a substantial danger of physical harm to others. (CALJIC No. 4.17.) The test for extension of commitment is not the same as the test for insanity. One single recent act of violence unrelated to the original crime, or a single psychiatric opinion that an individual is dangerous as a result of a mental disorder, constitutes substantial evidence to support an extension.
 
 (People
 
 v.
 
 Beard, supra,
 
 173 Cal.App.3d 1113.)
 

 Respondent’s contention that a diagnosis of antisocial personality disorder is insufficient as a matter of law to support an extension is clearly without merit. First, an antisocial personality disorder is a mental disorder within the meaning of Penal Code section 1026.5. Second, the DSM III-R contains a detailed set of diagnostic criteria for diagnosis of an antisocial personality disorder. The disorder is identified by criteria other than repeated criminal and antisocial behaviors. It includes anger, unstable moods, impulsiveness, lack of remorse, inability to empathize with others, and limited frustration tolerance. Finally, all psychotherapists who testified stated that, in their opinion, respondent suffered from a mental disorder which caused him to be a substantial risk of harm to others. This evidence was sufficient to support a jury finding of dangerousness caused by mental disorder. The trial court erred in removing the issue of respondent’s mental disorder and dangerousness from the jury.
 

 Conclusion
 

 We conclude that a diagnosis of antisocial personality disorder may be substantial evidence of a mental disorder under Penal Code section 1026.5, where the diagnosis is based on criteria in addition to repeated criminal or
 
 *281
 
 antisocial behavior. We further conclude that the trial court erred in granting the motion for nonsuit on the ground that antisocial personality disorder was not a mental disorder as a matter of law. Finally, we conclude that double jeopardy provisions are not applicable to extension proceedings either by constitutional or statutory mandate, and do not preclude a retrial of petitioner’s request to extend respondent’s commitment.
 

 Disposition
 

 The petition for writ of mandate is granted. Respondent’s petition for writ of habeas corpus is denied. The trial court is ordered to vacate its order and judgment of dismissal, to enter a new and different order denying the motion for nonsuit, and to proceed on the petition to extend respondent’s commitment by impaneling a new jury for trial on the merits. Both parties may, of course, waive jury on retrial, or respondent may admit the allegations of the petition.
 

 Turner, R J., and Ashby, J., concurred.
 

 The petition of real party in interest for review by the Supreme Court was denied November 14, 1991.
 

 [1]
 

 The trial court elected to proceed with the evidentiary portion of the case while the parties prepared to argue the nonsuit motion. The motion itself, however, was based only on the evidence presented during petitioner’s case-in-chief.
 

 [2]
 

 Respondent contends that the trial court’s judgment in his favor is reviewable on appeal, if at all, and that the petition for writ of mandate should be denied on this basis. In light of the impact of the trial court’s ruling on other extension proceedings and the urgent nature of extension proceedings, we conclude that special circumstances exist warranting review by mandate.
 
 (People
 
 v.
 
 Superior Court
 
 (Dodson) (1983) 148 Cal.App.3d 990, 995-996 [196 Cal.Rptr. 431].)
 

 [3]
 

 An individual is subject to a civil conservatorship if he or she is gravely disabled, i.e., as a result of a mental disorder, unable to provide for his or her food, clothing, or shelter. (Welf. & Inst. Code, § 5008, subd. (h)(1).)
 

 [4]
 

 We are aware of no United States Supreme Court opinion which specifically addresses this issue. However, in
 
 Santosky
 
 v.
 
 Kramer
 
 (1982) 455 U.S. 745 [71 L.Ed.2d 599, 102 S.Ct. 1388], the court concluded that double jeopardy did not bar successive proceedings to terminate an individual’s parental rights.
 

 [5]
 

 We have taken judicial notice of the legislative history of Penal Code section 1026.5 pursuant to Evidence Code sections 452, subdivision (c) and 459.
 

 [6]
 

 The trial court did not address the issue of whether respondent represented a substantial danger of physical harm to others.
 

 [7]
 

 The Supreme Court in
 
 Fields
 
 stated: “[I]f the defense expert can point to no symptom, no manifestation, of defendant’s condition except repeated criminal or antisocial acts, that condition cannot be considered grounds for finding defendant insane. [Fn. omitted; citation.] Whether this requirement denies the insanity defense to a person with an ‘antisocial personality’ will depend upon the individual case, and on the ability of the psychiatrist to base a diagnosis upon facts additional to a list of defendant’s criminal or antisocial acts.” (35 Cal.3d at p. 370.)