[No. F053531. Fifth Dist. Apr. 16, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN JAY DOBSON, Defendant and Appellant.

1424

Counsel

Paul Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Stephanie A. Mitchell, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**HARRIS, Acting P. J.—**

## INTRODUCTION

*Anders v. California* (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396] (*Anders*) and *People v. Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071] (*Wende*) require an appellate court to independently review the record in a criminal defendant's first appeal as a matter of right if appointed appellate counsel represents he or she has found no arguable issues. In *Conservatorship of Ben C.* (2007) 40 Cal.4th 529 [53 Cal.Rptr.3d 856, 150 P.3d 738] (*Ben C.*), the California Supreme Court held that *Anders/Wende* review is not required on an appeal from the imposition of a conservatorship under the Lanterman-Petris-Short Act (LPS Act; Welf. & Inst. Code, § 5000 et seq.). In this case, we find *Ben C.* compels a similar conclusion in an appeal from the denial of outpatient status pursuant to a petition for restoration of competency (Pen. Code,[1] § 1026.2), if appointed appellate counsel represents he or she has found no arguable issues, and that this court is not required to independently review the record pursuant to the *Anders/Wende* procedures.

## FACTUAL AND PROCEDURAL HISTORY

In 1998, appellant Steven Jay Dobson pleaded guilty to vehicle theft (Veh. Code, § 10851, subd. (a)) and admitted four prior strike convictions. He also pleaded not guilty by reason of insanity. The trial court found him not guilty by reason of insanity (Pen. Code, § 1026), based on psychiatric evaluations that he suffered from auditory hallucinations, and heard voices telling him to drive away with another person's car and to kill his wife and son. The court ordered him committed to Patton State Hospital for a maximum term of

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

confinement of 25 years to life. Appellant was subsequently transferred to Napa State Hospital.[2] (See *People v. Dobson, supra,* F048015.)

In December 2004, appellant was placed on outpatient status. In January 2005, appellant absconded from the program. In March 2005, the trial court granted a petition to revoke outpatient status (§ 1608), and found that he violated the terms of the conditional release program, attempted to obtain illegal drugs while on outpatient status, and he refused to take medications, accept the mental health diagnosis, or cooperate with his therapist. In December 2005, this court affirmed the trial court's ruling. (See *People v. Dobson, supra,* F048015.)

On January 31, 2007, appellant filed a petition for release in the Superior Court of Fresno County, based on restoration of sanity, and requested a hearing pursuant to section 1026.2. The court granted his motion for a hearing. On May 9 and June 19, 2007, the court conducted the hearing on the matter. Appellant was represented by the public defender's office.

On June 19, 2007, the court denied the petition, and found appellant would pose a danger to the health and safety of others due to a mental defect, disease, or disorder, based on his continued refusal to accept the diagnosis and treatment of mental health professionals, his stated intent to use illegal drugs, and his previous history of noncompliance with the terms of the outpatient program. On June 20, 2007, the court filed the order denying the petition.

On August 2, 2007, appellant filed a timely notice of appeal.

On November 16, 2007, appellant's appointed appellate counsel filed an opening brief which adequately summarized the facts and cited to the record, which raised no issues, and asked this court to independently review the record pursuant to *Anders/Wende*. Appellate counsel further asserted that *Ben C.* did not foreclose *Wende* review, and this court should exercise its discretion to conduct an independent review of the record, and invite and accept supplemental briefing from appellant.

By letter of November 16, 2007, this court invited appellant to submit additional briefing and state any grounds of appeal he may wish this court to consider. Appellant has not done so. This court requested further briefing from respondent as to whether we are required to conduct an independent review of the record pursuant to *Anders/Wende*.

---

[2] We take judicial notice of the record and the nonpublished opinion in *People v. Dobson* (Dec. 21, 2005, F048015).

## DISCUSSION

Given appellate counsel's decision to file a *Wende* brief in this case, we are called upon to determine whether we must independently review the record pursuant to *Anders/Wende* in this appeal from the denial of a "petition for restoration of sanity." In resolving this issue, we must review the holdings of *Anders*, *Wende*, and *Ben C.*, and the statutory scheme for criminal commitments and petitions to restore sanity, to determine whether the instant appeal should be dismissed.

A. Anders, Wende, *and* Ben C.

In *Anders*, the United States Supreme Court held that when appointed counsel conducts a conscientious examination of the proceedings but finds no meritorious ground in a criminal defendant's first appeal as of right, counsel should advise the court and request permission to withdraw. (*Anders, supra*, 386 U.S. at pp. 741, 744.) To protect the defendant's constitutional right to assistance of counsel, the "request must . . . be accompanied by a brief referring to anything in the record that might arguably support the appeal," and a copy of the brief should be provided to the indigent defendant and time given to enable him or her to "raise any points that he [or she] chooses." (*Id.* at p. 744.) The appellate court fully examines all the proceedings to decide whether the appeal is "wholly frivolous." (*Ibid.*)

In *Wende*, the California Supreme Court held that appointed counsel in a criminal appeal is not required to seek permission to withdraw if he or she finds no arguable issues. (*Wende, supra*, 25 Cal.3d at p. 442.) *Wende* held the appellate court must "conduct a review of the entire record whenever appointed counsel submits a brief which raises no specific issues or describes the appeal as frivolous." (*Id.* at p. 441.)

In *In re Sade C.* (1996) 13 Cal.4th 952 [55 Cal.Rptr.2d 771, 920 P.2d 716] (*Sade C.*), the California Supreme Court refused to extend *Anders* and *Wende* to appeals from juvenile dependency proceedings. "By its very terms, *Anders*'s 'prophylactic' procedures are limited in their applicability to appointed appellate counsel's representation of an indigent *criminal defendant*—and there only in his first appeal as of right. An indigent parent adversely affected by a state-obtained decision on child custody or parental status is simply not a criminal defendant. Indeed, the proceedings in which he is involved must be deemed to be civil in nature and not criminal. [Citation.] To quote Chief Justice Burger's concurring opinion in *Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18, 34 [68 L.Ed.2d 640, 101 S.Ct. 2153] . . . , they are simply 'not "punitive." ' That they may be said to 'bear[] many of the indicia of a criminal trial' [citation] goes to form and not to

substance. As a consequence, they are far removed from the object of the *Anders* court's concern, which was the first appeal as of right *in a criminal action.*" (*Sade C., supra*, 13 Cal.4th at p. 982, fn. omitted.)

Thus, the purpose of the *Anders/Wende* procedure is "to ensure that attorneys who are appointed to represent indigent defendants in the defendant's first appeal conscientiously scrutinize the record and actively assert those issues which may, in the attorney's professional judgment, result in a reversal of the judgment or in a reduction of the defendant's sentence. [Citations.] These procedures apply, as a matter of due process and equality of representation, *only to a defendant's first appeal as of right.* [Citations.]" (*People v. Thurman* (2007) 157 Cal.App.4th 36, 45 [68 Cal.Rptr.3d 425], italics added.)

In *Ben C.*, the California Supreme Court held the procedures of *Anders/Wende* are not applicable in LPS Act conservatorship appeals. In determining this issue, *Ben C.* cited to *Pennsylvania v. Finley* (1987) 481 U.S. 551, 555 [95 L.Ed.2d 539, 107 S.Ct. 1990], where the United States Supreme Court declined to extend *Anders* to collateral attacks upon criminal convictions, and also to the analysis in *Sade C.*, as set forth *ante.* (*Ben C., supra*, 40 Cal.4th at pp. 536–537.) "By the same reasoning, the *Anders/Wende* procedures are not required in appeals from LPS conservatorship proceedings. The conservatee is not a criminal defendant and the proceedings are civil in nature." (*Id.* at p. 537.)

*Ben C.* further held that neither federal nor state due process guarantees required the extension of the *Anders/Wende* procedures to appeals from LPS Act conservatorships. In reviewing the due process considerations, *Ben C.* balanced the three factors it similarly employed in *Sade C.*, as set forth in *Lassiter v. Department of Social Services, supra*, 452 U.S. at page 27 (*Lassiter*): " '(1) the private interests at stake; (2) the state's interests involved; and (3) the risk that the absence of the procedures in question will lead to an erroneous resolution of the appeal.' [Citation.]" (*Ben C., supra*, 40 Cal.4th at p. 539.)

In analyzing the three factors, *Ben C.* noted the LPS Act promotes both private and public interests: "Among its goals are 'ending the inappropriate and indefinite commitment of the mentally ill, providing prompt evaluation and treatment of persons with serious mental disorders, guaranteeing and protecting public safety, safeguarding the rights of the involuntarily committed through judicial review, and providing individualized treatment, supervision and placement services for the gravely disabled by means of a conservatorship program. [Citation.]' [Citation.] The Act also serves to protect the mentally ill

from criminal victimization [citation] and from the myriad forms of suffering endured by those unable to care for themselves." (*Ben C., supra*, 40 Cal.4th at p. 540.)

*Ben C.* acknowledged there were significant liberty interests at stake in a conservatorship proceeding, which could lead to a person being involuntarily confined for up to one year, with the conservatorship extended for additional one-year periods "so long as the person remains gravely disabled." (*Ben C., supra*, 40 Cal.4th at p. 540.) However, "the Legislature and this court have built several layers of important safeguards into conservatorship procedure. These safeguards are extensive and designed to serve all three of the *Lassiter/Sade C.* considerations. [Citation.]" (*Ben C., supra*, 40 Cal.4th at p. 540.) Specifically, the conservatee in such proceedings has the right to trial and appellate counsel, a jury trial, a unanimous jury finding, and the party seeking imposition of the conservatorship has the burden of proof beyond a reasonable doubt. (*Id.* at p. 541.) The period of conservatorship is only one year and the conservatee has two opportunities to petition for rehearing during that period. At the rehearing, the matter is tried to the court, the conservatee has the right to appointed counsel, and the conservatee need only prove by a preponderance of the evidence that he or she is no longer gravely disabled. (*Ibid.*) A request to extend the conservatorship must include the opinion of " 'two physicians or licensed psychologists who have a doctoral degree in psychology and at least five years of postgraduate experience in the diagnosis and treatment of emotional and mental disorders that the conservatee is still gravely disabled . . . .' [Citation.]" (*Id.* at p. 542.)

*Ben C.* reasoned that "[t]hese procedures reflect an extension of many safeguards also afforded to criminal defendants, while taking into account the essential differences between the two systems. Ordinarily, once a criminal judgment and sentence are final, the trial court loses jurisdiction to correct error. [Citation.] The criminal defendant's only recourse then is to the courts of review. The LPS scheme is quite different because of the one-year limit on commitments and the ability of the conservatee to return twice to the trial court for reconsideration during that 12-month period. [¶] As a result, the trial court's ongoing supervision remains focused on a conservatee's current needs and condition, in a manner quite different from that followed in a criminal context. Allowing continuing trial court attention ensures much more direct and appropriate intervention. It strikes the *Lassiter/Sade C.* balance in a qualitatively different way. It provides the conservatee with a more immediate avenue for modification than that afforded by the more cumbersome appellate review. And it keeps the focus primarily on the conservatee's current needs and progress, rather than on a retrospective consideration of conditions that may no longer exist." (*Ben C., supra*, 40 Cal.4th at pp. 542–543.) This "panoply of safeguards" in LPS Act proceedings led the court to conclude

that extension of the *Anders/Wende* procedures was not required by due process considerations. (*Ben. C., supra*, at p. 543.)

*Ben C.* also rejected the equal protection claim that criminal defendants and LPS Act conservatees are similarly situated. "Criminal defendants face punishment, but an LPS commitment ' "may not reasonably be deemed punishment either in its design or purpose." ' [Citation.]" (*Ben C., supra*, 40 Cal.4th at p. 543.) *Ben C.* further rejected the argument to extend *Anders/Wende* procedures "under our inherent power to declare rules of California appellate procedure." (*Id.* at p. 543.) "Both the individual and the community have a profound interest in the calibrated and appropriate treatment of those who suffer from grave mental impairment. While placement in a secure setting is a burden on freedom, it is imposed, on a time-limited basis, to protect both the patient and his neighbors. Society has an obligation to ensure that freedom is not impinged upon unnecessarily or for an inappropriate period. The extensive framework of modulated intervention, under the supervision of both mental health professionals and the courts, has been created to provide that assurance. Adding yet another layer of review would be an undue expansion in cases that have been so extensively supervised, under the full panoply of protections afforded by jury trial, proof beyond a reasonable doubt, and the assistance of at least two appointed counsel. We decline to extend a system of review that is not constitutionally compelled and that we, ourselves, have recognized has been subject to ' "consistent and severe criticism" ' from its inception. [Citation.]" (*Ben C., supra*, 40 Cal.4th at p. 543.)

We are thus faced with the question of whether the *Anders/Wende* procedures must be followed in an appeal from the denial of a petition for restoration of competency, where appointed appellate counsel represents he or she has found no arguable issues, or whether *Ben C.* compels a different conclusion. As in *Ben C.*, this question can only be answered by reviewing the underlying statutory scheme at issue, which, in this case, is section 1026 et seq.

## B. *Section 1026 et seq.*

Section 1026 et seq. set forth numerous procedural and substantive safeguards before a criminal defendant may be committed to a state hospital pursuant to a plea of not guilty by reason of insanity. A defendant is presumed to have been sane at the time he or she committed an offense. (§ 1026, subd. (a); see *People v. Jefferson* (2004) 119 Cal.App.4th 508, 519 [14 Cal.Rptr.3d 473].) A defendant may plead not guilty to the substantive charges and deny any special allegations, and join that plea with a plea of "[n]ot guilty by reason of insanity." (§ 1016, subds. (2), (6); see § 1026,

subd. (a).) When such pleas are entered, the court conducts a bifurcated trial and the issues of guilt and sanity are separately tried. (*People v. Hernandez* (2000) 22 Cal.4th 512, 520 [93 Cal.Rptr.2d 509, 994 P.2d 354] (*Hernandez*); *Stark v. Hickman* (9th Cir. 2006) 455 F.3d 1070, 1074.) In the first phase of trial, the defendant is tried on his or her factual guilt without reference to the insanity plea. If the defendant is found guilty, he or she receives a second jury trial in which his or her legal sanity is determined. (§ 1026, subd. (a); *Stark v. Hickman, supra*, 455 F.3d at pp. 1074–1075.)

"Insanity, under California law, means that at the time the offense was committed, the defendant was incapable of knowing or understanding the nature of his act or of distinguishing right from wrong. [Citations.]" (*Hernandez, supra*, 22 Cal.4th at p. 520.) "The 'sanity trial is but a part of the same criminal proceeding as the guilt phase' [citation] but differs procedurally from the guilt phase of trial 'in that the issue is confined to sanity and the burden is upon the defendant to prove by a preponderance of the evidence that he was insane at the time of the offense' [citation]. As in the determination of guilt, the verdict of the jury must be unanimous. [Citation.]" (*Id.* at p. 521.) The defense of not guilty by reason of insanity "shall be found by the trier of fact only when the accused person proves by a preponderance of the evidence that he or she was incapable of knowing or understanding the nature and quality of his or her act and of distinguishing right from wrong at the time of the commission of the offense." (§ 25, subd. (b).)

If the jury finds the defendant was insane at the time of the offense, the trial court shall commit the defendant to a state hospital or other appropriate public or private facility for the care and treatment of the mentally disordered, or place the defendant on outpatient status pursuant to section 1600 et seq. (§ 1026, subd. (a); see *People v. Cross* (2005) 127 Cal.App.4th 63, 72 [25 Cal.Rptr.3d 186] (*Cross*); *People v. Sword* (1994) 29 Cal.App.4th 614, 619–620 [34 Cal.Rptr.2d 810] (*Sword*).) Upon a commitment to a state hospital, the medical director of the facility submits semiannual reports to the court as to the person's status and progress. (§ 1026, subd. (f); see *Sword, supra*, 29 Cal.App.4th at p. 620.)

A finding of insanity is dispositive only on the question of whether the accused is to be held criminally responsible for committing the charged offense. (*Hernandez, supra*, 22 Cal.4th at p. 529 (conc. opn. of Brown, J.); *People v. Severance* (2006) 138 Cal.App.4th 305, 318 [41 Cal.Rptr.3d 397].) "[A]n insanity acquittee has demonstrated dangerousness by committing a criminal offense. The acquittee has raised his mental illness as a defense to his criminal conduct and there has been an adjudication that he committed a criminal act and was legally insane when he did so." (*People v. Wilder* (1995) 33 Cal.App.4th 90, 105 [39 Cal.Rptr.2d 247] (*Wilder*).) "The plea of insanity

is thus necessarily one of 'confession and avoidance.' [Citation.] 'Commission of the overt act is conceded' but punishment is avoided *upon the sole ground* that at the time the overt act was committed the defendant was [insane].' [Citation.]" (*Hernandez, supra*, 22 Cal.4th at p. 521.)

A successful insanity plea relieves the defendant of all criminal responsibility. (*People v. Jantz* (2006) 137 Cal.App.4th 1283, 1295 [40 Cal.Rptr.3d 875].) The commitment of the defendant to a state hospital "is in lieu of criminal punishment and is for the purpose of treatment, not punishment. [Citation.]" (*People v. Superior Court (Williams)* (1991) 233 Cal.App.3d 477, 485 [284 Cal.Rptr. 601] (*Williams*).) "The purpose of committing an insanity acquittee is two-fold: to treat his mental illness and to protect him and society from his potential dangerousness. [Citation.]" (*Wilder, supra*, 33 Cal.App.4th at p. 101.)

A defendant found not guilty by reason of insanity may be released from a state hospital upon (1) the restoration of sanity pursuant to the provisions of section 1026.2; (2) expiration of the maximum term of commitment, which means "the longest term of imprisonment which could have been imposed for the offense or offenses of which the person was convicted" (§ 1026.5, subd. (a)(1)); or (3) approval of outpatient status pursuant to the provisions of section 1600 et seq. (§ 1026.1; see *People v. Soiu* (2003) 106 Cal.App.4th 1191, 1194–1195 [131 Cal.Rptr.2d 421] (*Soiu*).)

The instant case involves a request for release based upon the filing of a petition for restoration of sanity pursuant to section 1026.2. Such a petition involves a two-step process. (*Soiu, supra*, 106 Cal.App.4th at p. 1196; *Barnes v. Superior Court* (1986) 186 Cal.App.3d 969, 973 [231 Cal.Rptr. 158] (*Barnes*).) The first step requires the person to apply for release to the superior court of the county from which the commitment was made. (§ 1026.2, subd. (a).) Such an application cannot be made until the person has served an initial 180-day commitment period. (§ 1026.2, subd. (d).) Once the application is filed, the court must conduct a hearing, commonly called the outpatient placement hearing. (§ 1026.2, subd. (a); see *Soiu, supra*, 106 Cal.App.4th at pp. 1196–1197.)

At the outpatient placement hearing, which is the type of hearing that was held in this case, the applicant must demonstrate he or she will not "be a danger to the health and safety of others, due to mental defect, disease, or disorder, *while under supervision and treatment in the community*." (§ 1026.2, subd. (e), italics added; see *Soiu, supra*, 106 Cal.App.4th at p. 1196.) "An outpatient status hearing . . . *is not a criminal proceeding*." (*Sword, supra*, 29 Cal.App.4th at p. 635, italics added.) An applicant has "substantial procedural safeguards" at the outpatient placement hearing, including the right to counsel

and to confront and cross-examine witnesses, but not the right to a jury trial.[3] (*People v. Tilbury, supra,* 54 Cal.3d at pp. 68–70 (*Tilbury*); *Soiu, supra,* 106 Cal.App.4th at pp. 1199, 1200–1201; *Cross, supra,* 127 Cal.App.4th at pp. 72–73; *Barnes, supra,* 186 Cal.App.3d at p. 974; *In re Reyes* (1984) 161 Cal.App.3d 655, 658–659 [207 Cal.Rptr. 763].) The applicant has the burden of proof by a preponderance of the evidence. (§ 1026.2, subd. (k); see *Soiu, supra,* 106 Cal.App.4th at p. 1198; *Sword, supra,* 29 Cal.App.4th at p. 621.) The trial court's ruling at this stage is reviewed for an abuse of discretion. (*Cross, supra,* 127 Cal.App.4th at p. 73; *People v. Michael W.* (1995) 32 Cal.App.4th 1111, 1119 [38 Cal.Rptr.2d 556] (*Michael W.*).)

If the court finds the applicant would not be dangerous under supervision and treatment in the community, the person is placed in "an appropriate forensic conditional release program for one year," which may consist of outpatient supervision and treatment, and the court retains jurisdiction over the applicant. (§ 1026.2, subd. (e); see *Soiu, supra,* 106 Cal.App.4th at p. 1196.) " 'Outpatient status is not a privilege given the [offender] to finish out his sentence in a less restricted setting; rather it is a discretionary form of treatment to be ordered by the committing court only if the medical experts who plan and provide treatment conclude that such treatment would benefit the [offender] and cause no undue hazard to the community.' [Citation.]" (*Sword, supra,* 29 Cal.App.4th at p. 620.) While in the outpatient program, the applicant may be returned to the state facility after a hearing if determined dangerous to others while in the program. Such a hearing is not a part of a criminal prosecution but requires due process. (§ 1609; *People v. DeGuzman* (1995) 33 Cal.App.4th 414, 419–420 [39 Cal.Rptr.2d 137].)

The second step in the section 1026.2 release process is referred to as the restoration of sanity trial, and can only be reached if the applicant has already met the threshold test for placement in "an appropriate forensic conditional release program." (§ 1026.2, subd. (e); see *Soiu, supra,* 106 Cal.App.4th at p. 1196; *Barnes, supra,* 186 Cal.App.4th at pp. 973–974.) "Outpatient status is a prerequisite to a finding that sanity has been restored. [Citation.]" (*Sword, supra,* 29 Cal.App.4th at p. 620.) At the end of one year in an outpatient program, the court "shall have a trial to determine if sanity has been restored, which means the applicant is no longer a danger to the health and safety of others, due to mental defect, disease, or disorder." (§ 1026.2, subd. (e); see *Soiu, supra,* 106 Cal.App.4th at p. 1196.) The applicant must show he or she would not be dangerous if unconditionally released. (*Barnes, supra,* 186 Cal.App.3d at p. 974.) The applicant again has the same due process rights, including a jury trial, and the burden of proving he or she would not be

---

[3] The California Supreme Court has found the lack of a jury trial at the outpatient placement hearing does not violate due process or equal protection. (*People v. Tilbury* (1991) 54 Cal.3d 56, 68–70 [284 Cal.Rptr. 288, 813 P.2d 1318].)

dangerous by a preponderance of the evidence. (§ 1026.2, subd. (k); see *Soiu, supra,* 106 Cal.App.4th at pp. 1199, 1201; *Tilbury, supra,* 54 Cal.3d at p. 68; *Sword, supra,* 29 Cal.App.4th at p. 621.) We review the trial court's determination for an abuse of discretion, drawing every reasonable inference in favor of the trial court's determination. (*Sword, supra,* 29 Cal.App.4th at pp. 624–625; *Michael W., supra,* 32 Cal.App.4th at pp. 1118–1119.) Upon denial of the petition, the applicant may not file a new application under section 1026.2 for one year. (§ 1026.2, subd. (j).)

Section 1026.2, subdivision (m) provides that in certain circumstances, an insanity acquittee who is subject to a term of imprisonment is not eligible for participation in the one-year forensic conditional release program, but upon restoration of sanity, will be returned to state prison. "This subdivision shall apply only to persons who, at the time of the petition or recommendation for restoration of sanity, are subject to a term of imprisonment with prison time remaining to serve or are subject to the imposition of a previously stayed sentence to a term of imprisonment. Any person to whom this subdivision applies who petitions or is recommended for restoration of sanity may not be placed in a forensic conditional release program for one year, and a finding of restoration of sanity may be made without the person being in a forensic conditional release program for one year. *If a finding of restoration of sanity is made, the person shall be transferred to the custody of the California Department of Corrections to serve the term of imprisonment remaining or shall be transferred to the appropriate court for imposition of the sentence that is pending, whichever is applicable.*" (§ 1026.2, subd. (m), italics added.)[4]

A person found not guilty by reason of insanity may not be kept in actual custody longer than the maximum state prison term to which he or she could have been sentenced for the underlying offense. (§ 1026.5, subd. (a); see *People v. Haynie* (2004) 116 Cal.App.4th 1224, 1226 [11 Cal.Rptr.3d 163].) At the end of that period, however, the district attorney may petition to extend the period of commitment pursuant to section 1026.5 where the defendant has committed a felony and "by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others." (§ 1026.5, subd. (b)(1); *Williams, supra,* 233 Cal.App.3d at p. 485.) The individual is entitled to appointment of counsel and a jury trial, the issue raises a question of fact, and the state has the burden of proving beyond a reasonable doubt the person is mentally ill and a physical danger to others. (§ 1026.5, subd. (b); see *Wilder, supra,* 33 Cal.App.4th at p. 98; *Williams, supra,* 233 Cal.App.3d at p. 488; *People v. Superior Court (Blakely)* (1997) 60 Cal.App.4th 202, 204–205 [70 Cal.Rptr.2d 388]; *People v. Haynie, supra,* 116

---

[4] We are not called upon to address the potential application of section 1026.2, subdivision (m) to the procedural circumstances of this case.

Cal.App.4th at p. 1226.) Each extension is limited to a two-year period, and additional recommitments also require jury trials. (§ 1026.5, subd. (b)(8); *Wilder, supra,* 33 Cal.App.4th at p. 98.)

The proceedings to extend commitments under section 1026.5 are essentially civil in nature, for which the purpose is treatment and not punishment, even though they include many constitutional protections relating to criminal proceedings. (*Wilder, supra,* 33 Cal.App.4th at p. 99; *People v. Givan* (2007) 156 Cal.App.4th 405, 409 [67 Cal.Rptr.3d 356].) "An individual subject to recommitment proceedings 'is not threatened with penal treatment. He has had his criminal trial and been adjudicated not guilty by reason of insanity. The only remaining issue is how long he must remain committed to a state hospital for treatment.' [Citation.] No criminal adjudication is involved." (*Williams, supra,* 233 Cal.App.3d at p. 485; see *Wilder, supra,* 33 Cal.App.4th at p. 99.)

■ The United States Supreme Court has found state commitment procedures substantially similar to section 1026 et seq., including the burden of proof and jury trial provisions, to be constitutional and not in violation of a defendant's rights to due process and equal protection. (*Jones v. United States* (1983) 463 U.S. 354, 366–370 [77 L.Ed.2d 694, 103 S.Ct. 3043] (*Jones*); *Tilbury, supra,* 54 Cal.3d at p. 65.) "[W]hen a criminal defendant establishes by a preponderance of the evidence that he is not guilty of a crime by reason of insanity, the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society." (*Jones, supra,* 463 U.S. at p. 370.)

C. *Analysis*

■ We believe the reasoning of *Ben C.* is applicable to the instant case and that *Anders/Wende* review is not required in an appeal from the denial of a petition for restoration of competency. A hearing on a petition to restore competency pursuant to section 1026.2 is not a criminal proceeding, even though the Legislature and the courts have held that an applicant is entitled to a court-appointed attorney and other due process protections ordinarily reserved for criminal trials. It is important to note that an insanity acquittee has already been subject to criminal proceedings, found guilty of the substantive charges, and then found not guilty by reason of insanity in a separate proceeding. Moreover, the insanity acquittee has already received substantial due process protections: a criminal defendant is presumed sane at the time the offense was committed (§ 1026, subd. (a); see *People v. Jefferson, supra,* 119 Cal.App.4th at p. 519), found not guilty by reason of insanity only upon a plea which he or she entered, had the burden of proving insanity by a

preponderance of the evidence, and the jury's verdict must have been unanimous. (§ 25, subd. (b); see *Hernandez, supra,* 22 Cal.4th at pp. 520–521.)

As explained *ante,* a successful insanity plea relieves the defendant of all criminal responsibility, and the commitment of the insanity acquittee to a state hospital "is in lieu of criminal punishment and is for the purpose of treatment, not punishment. [Citation.]" (*Williams, supra,* 233 Cal.App.3d at p. 485; see *People v. Jantz, supra,* 137 Cal.App.4th at p. 1295.) As a result of the insanity plea, "punishment is avoided *'upon the sole ground* that at the time the overt act was committed the defendant was [insane].' [Citation.]" (*Hernandez, supra,* 22 Cal.4th at p. 521.) Thus, by the time of a section 1026.2 hearing, the insanity acquittee is no longer subject to criminal proceedings, has filed a petition to establish that sanity has been restored, and sought to initiate the process leading to a finding that sanity has been restored.

■ As explained in *Sade C.,* the *Anders/Wende* procedures apply, "as a matter of due process and equality of representation, only to a defendant's first appeal as of right. [Citations.]" (*People v. Thurman, supra,* 157 Cal.App.4th 36, 45.) "An outpatient status hearing . . . is not a criminal proceeding." (*Sword, supra,* 29 Cal.App.4th at p. 635.) A hearing on a section 1026.2 petition to restore competency is not a criminal proceeding and not a criminal defendant's first appeal as a matter of right, such that the *Anders/Wende* procedures do not apply to an appeal from the court's ruling at that hearing.

■ We further conclude that neither federal nor state due process principles require extension of *Anders/Wende* procedures in an appeal from the denial of a petition for restoration of competency. As in *Ben C.* and *Sade C.,* we look to the three factors set forth by the United States Supreme Court in *Lassiter* to balance the due process considerations: " '(1) the private interests at stake; (2) the state's interests involved; and (3) the risk that the absence of the procedures in question will lead to an erroneous resolution of the appeal.' [Citation.]" (*Ben C., supra,* 40 Cal.4th at p. 539.)

A section 1026.2 proceeding promotes both private and public interests. "The purpose of committing an insanity acquittee is two-fold: to treat his mental illness and to protect him and society from his potential dangerousness. [Citation.]" (*Wilder, supra,* 33 Cal.App.4th at p. 101.) " '[W]hile it is obvious that confining a person acquitted under . . . section 1026 in a state hospital serves to protect society from that person's unreasonable acts and impulses, this sequestration likewise serves the patient by providing a setting for delivering treatment and services which may assist him or her towards mental health. The primary purpose of the state hospital system is to provide

for the care, treatment and education of its mentally disordered patients.' [Citation.]" (*Williams, supra,* 233 Cal.App.4th at p. 485.)

■ The United States Supreme Court has recognized that " 'commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.' [Citation.]" (*Jones, supra,* 463 U.S. at p. 361.) "[F]or the ordinary citizen, commitment to a mental hospital produces 'a massive curtailment of liberty,' [citation], and in consequence 'requires due process protection.' [Citations.]" (*Vitek v. Jones* (1980) 445 U.S. 480, 491–492 [63 L.Ed.2d 552, 100 S.Ct. 1254].) The court has further recognized, however, that "a finding of not guilty by reason of insanity is a sufficient foundation for commitment of an insanity acquittee for the purposes of treatment and the protection of society." (*Jones, supra,* 463 U.S. at p. 366.) "[W]hen a criminal defendant establishes by a preponderance of the evidence that he is not guilty of a crime by reason of insanity, the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society." (*Id.* at p. 370.)

Thus, the primary private issue at stake in a section 1026.2 hearing is the liberty interest of the insanity acquittee, a compelling interest implicitly protected by the due process clause of the Fourteenth Amendment. But there are also compelling public interests to continue the insanity acquittee's confinement until he is no longer a danger to himself or society.

In assessing the risk that the absence of *Anders/Wende* review would result in the erroneous resolution of an appeal from a section 1026.2 hearing, there are numerous procedural safeguards to ensure that an insanity acquittee's individual liberty interests are protected. After a period of 180 days following commitment to a state hospital, the insanity acquittee may file a petition pursuant to section 1026.2 for restoration of competency, to initiate the two-step process for discharge. Upon filing of the petition, the court *must* conduct a hearing. (§ 1026.2, subd. (a); see *Soiu, supra,* 106 Cal.App.4th at pp. 1196, 1197.) The insanity acquittee has "substantial procedural safe-guards" at the outpatient placement hearing, including the right to counsel and to confront and cross-examine witnesses.[5] (*Tilbury, supra,* 54 Cal.3d at pp. 68–70; see *Soiu, supra,* 106 Cal.App.4th at pp. 1199, 1200–1201; *Cross, supra,* 127 Cal.App.4th at pp. 72–73; *Barnes, supra,* 186 Cal.App.3d at pp. 974–975; *In re Reyes, supra,* 161 Cal.App.3d at pp. 658–659.) The trial court's ruling is reviewed for an abuse of discretion. (*Cross, supra,* 127 Cal.App.4th at p. 73; *Michael W., supra,* 32 Cal.App.4th at p. 1119.) If the

---

[5] As explained, *ante,* the California Supreme Court held the lack of a jury trial at the outpatient placement hearing does not violate due process or equal protection. (*Tilbury, supra,* 54 Cal.3d at pp. 68–70.)

petition is denied, the insanity acquittee may file a new petition in one year, and the court must again conduct a hearing. (§ 1026.2, subds. (a), (j); see *Soiu, supra,* 106 Cal.App.4th at pp. 1196, 1197.) Thus, as in *Ben C.*'s analysis of the LPS Act, there are a "panoply of safeguards" in the section 1026.2 procedure, which leads to the conclusion that extension of the *Anders/Wende* procedures is not required by due process considerations. (*Ben C., supra,* 40 Cal.4th at p. 543.)

■ Finally, an equal protection argument that criminal defendants and insanity acquittees are similarly situated is not persuasive to require the extension of the *Anders/Wende* procedures to an appeal from the denial of a section 1026.2 petition. *Ben C.* rejected a similar argument: "Criminal defendants face punishment, but an LPS commitment ' "may not reasonably be deemed punishment either in its design or purpose." ' " (*Ben C., supra,* 40 Cal.4th at p. 543.) As applicable to the instant case, we have already explained that an insanity acquittee "has raised his mental illness as a defense to his criminal conduct and there has been an adjudication that he committed a criminal act and was legally insane when he did so." (*Wilder, supra,* 33 Cal.App.4th at p. 105.) It is a " 'widely and reasonably held view' " that " 'insanity acquittees constitute a special class that should be treated differently from other candidates for commitment.' " (*Tilbury, supra,* 54 Cal.3d at p. 68; see *Wilder, supra,* 33 Cal.App.4th at p. 105.) The commitment of the defendant to a state hospital "is in lieu of criminal punishment and is for the purpose of treatment, not punishment," and an equal protection argument would similarly fail. (*Williams, supra,* 233 Cal.App.3d at p. 485.)

We thus conclude that when appointed appellate counsel files a *Wende* brief in an appeal from a denial of petition for restoration of competency, the *Anders/Wende* procedures are not applicable since it does not involve a criminal defendant's first appeal as a matter of right, and neither due process nor equal protection principles compel extension of the *Anders/Wende* procedures to this situation.

■ While *Ben C.* declined to extend *Anders/Wende* procedures, it offered guidance for Courts of Appeal when an appointed appellate counsel in a conservatorship appeal finds no arguable issues: "[C]ounsel need not and should not file a motion to withdraw. Instead, counsel should (1) inform the court he or she has found no arguable issues to be pursued on appeal; and (2) file a brief setting out the applicable facts and the law. Such a brief will provide an adequate basis for the court to dismiss the appeal on its own motion. Dismissal of an appeal raising no arguable issues is not inconsistent with article VI, section 14 of the California Constitution requiring that decisions determining causes 'be in writing with reasons stated.' Nothing is served by requiring a written opinion when the court does not actually decide

any contested issues." (*Ben C., supra,* 40 Cal.4th at p. 544, fns. omitted.) *Ben C.* further held the appellant is to be provided a copy of the brief and informed of the right to file a supplemental brief, and the appellate court may find it is appropriate to retain the appeal. (*Ben C., supra,* 40 Cal.4th at p. 544, fns. 6, 7.)

In the instant case, appointed appellate counsel filed a brief setting out the applicable facts and law, and informed the court that he found no arguable issues to be pursued on appeal. This court invited appellant to submit additional briefing and state any grounds of appeal he may wish this court to consider. Appellant has not done so. We therefore dismiss the appeal.

## DISPOSITION

The appeal is dismissed.

Levy, J., and Gomes, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 25, 2008, S163647. George, C. J., and Corrigan, J., did not participate therein.